This is a case of first impression in Alabama. It involves the subrogation rights of an insurer against its own insured. For the reasons we will state, we reverse.
The facts are not in dispute. On 21 August 1977, plaintiff Karen S. Moring was injured in a single vehicle accident in Mobile County. The vehicle in which she was a passenger was being driven by Lawrence D. Phillips. Moring incurred in excess of $13,000 in medical expenses as a result of the injuries she suffered.
At the time she was injured, Moring's father, Herbert Moring, had in full force and effect four policies of insurance issued by defendant State Farm Mutual Automobile Insurance Company. The four policies carried medical payment benefits in the *Page 811 
aggregate amount of $8,000. State Farm also provided liability and medical payments coverage to Lawrence Phillips, under a policy insuring his father Anthony Phillips and his family. The liability limits were $25,000 per person while medical benefits limits were in the amount of $5,000 per person.
A settlement of $25,000 was reached between the Morings and the Phillipses, with the approval of State Farm, in satisfaction of all claims by Moring against Phillips, which was concluded by entry of a consent judgment.
Following this settlement, Moring made demand for payment of her $13,000 plus medical expenses under the coverage provided by both the Moring and Phillips policies. State Farm contends that Moring did not present a proper claim for medical benefits in accordance with the provisions of the policies and that it did not receive proper medical bills or information concerning her medical expenses. Moring contends, however, that a claim was submitted by letter to Pete Cobb, an employee at State Farm's claims office. Moring also says that State Farm had knowledge of the medical expenses because of its preparation of its defense of her suit against Phillips.
State Farm eventually agreed to pay Moring the medical benefits on condition that Moring execute the documents as provided for in the policies that would protect State Farm's subrogation rights. Moring refused to execute those documents when she learned that State Farm would be entitled to be reimbursed the medical benefits paid her out of $25,000 because of the consent judgment. She then filed this suit to recover her medical expenses under the medical benefits coverage provisions of the policies.
The case was tried to the court without a jury and judgment was entered in favor of State Farm. This appeal followed.
All the policies were identical except for the limits of coverage and each contained the following pertinent provisions:
 "SECTION 1 — LIABILITY AND MEDICAL PAYMENTS INSURING AGREEMENTS
". . .
"COVERAGE C — MEDICAL PAYMENTS
 "To pay reasonable medical expenses incurred for services furnished within one year from the date of accident:
". . .
 "Division 2. to or for any other person who sustains bodily injury, caused by accident, while occupying the owned motor vehicle if such vehicle is being used by an insured; provided that no such payment shall be made unless the person to or for whom such payment shall be made unless the person to or for whom such payment is made shall have executed a written agreement that the amount of such payment shall be applied toward the settlement of any claim, or the satisfaction of any judgment for damages entered in his favor, against any insured because of bodily injury arising out of any accident to which coverage A applies.
". . .
"POLICY CONDITIONS
". . .
 "2. Action Against Company. No action shall lie against the company:
 "(a) Unless as a condition precedent thereto there shall have been full compliance with all terms of this policy.
". . .
 "3. Assistance and Cooperation of the Insured. The insured shall cooperate with the company and, upon its request, attend hearings and trials, assist in effecting settlements,. . . .
 "4. Subrogation. Upon payment under this policy . . . the company shall be subrogated to all the insured's rights of recovery therefor and the insured shall do whatever is necessary to secure such rights and do nothing to prejudice them.
 "Upon payment under coverages C and M of this policy the company shall be subrogated to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery which the *Page 812 
injured person or anyone receiving such payment may have against any person or organization and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights."
State Farm's position, adopted by the trial court, is that Moring breached the insurance contracts by refusing to execute the documents recognizing State Farm's right to be reimbursed, to the extent of medical payments paid her, from the $25,000 settlement with Phillips; consequently, State Farm says, Moring is precluded from recovering under the medical payments provisions of the policies. State Farm also argues that this case does not deal with subrogation rights, but rather reimbursement rights. However, the record shows that State Farm relied upon its subrogation rights when seeking to recover medical payments benefits made to Moring. An affidavit of Warren C. Harris, the claims superintendent of the Mobile office of State Farm, was incorporated into the record. It contained the following statement:
 ". . . The plaintiff [Moring] in this present action has now presented to us as such a claim for medical pay coverage under the policy. We had advised the plaintiff prior to the settlement of her claim against Anthony Phillips that we would honor medical payment coverage under such policies provided the plaintiff execute the requested document as provided for in such policy which would protect State Farm's subrogation interests with reference to the payment of such medical expenses. . . ."
State Farm's right to be reimbursed for the medical benefits paid Moring is derived from State Farm's subrogation interests as stated in the policy. Therefore, State Farm is entitled to reimbursement only if it has a valid subrogation interest.
Moring takes the position that State Farm possessed no right of subrogation against the tort-feasor, Phillips, because Phillips was also insured by State Farm. Therefore, because State Farm's refusal to pay was based upon Moring's failure to execute the subrogation agreement, Moring argues that she should recover because State Farm had no right of subrogation and, thus, wrongfully withheld payment to her.
Both parties agree that where a tort-feasor is either uninsured or insured by a different insurer, the insurer's right of subrogation against the tort-feasor is valid. However, the facts in this case show the tort-feasor and the victim to be insured by the same insurer. Resolution of the question presented by the facts of this case, one of first impression in Alabama, requires a review of relevant and analogous authorities.
"No right of subrogation exists where the wrongdoer is also an insured under the same policy." 44 Am.Jur.2d, Insurance, § 1794 (1982). This principle is illustrated by several cases where the tort-feasor was a named insured within the terms of the policy. See Graham v. Rockman, 504 P.2d 1351 (Alaska 1972);Miller v. Kujak, 4 Wis.2d 80, 90 N.W.2d 137 (1958); Pendleburyv. Western Cas. Sur. Co., 89 Idaho 456, 406 P.2d 129 (1965); and E.C. Long, Inc. v. Brennan's of Atlanta, 148 Ga. App. 796,252 S.E.2d 642 (1979).
In Couch on Insurance, 2d § 61:133 (1966), it is stated: "No right of subrogation can arise in favor of the insurer against its own insured, since by definition, subrogation exists only with respect to rights of the insured against third persons to whom the insurer owes no duty." Courts in other jurisdictions have held that where both parties involved are insured by the same insurer, no right of subrogation exists against either insured.
In Stetina v. State Farm Mut. Auto. Ins. Co., 196 Neb. 441,243 N.W.2d 341 (1976), an action by Frank Stetina against State Farm, Frank's daughter, Diane, was injured when the automobile in which she was riding was struck by a vehicle driven by one Lusins. Both Lusins and the Stetina family were insured by State Farm. A settlement of $50,000 in satisfaction of all Stetina's claims against Lusins was procured with *Page 813 
State Farm's assistance. As part of this agreement Stetina entered into a covenant not to sue Lusins. Stetina's insurance policy contained a provision, identical to the one in Moring's policy, which allows State Farm to be subrogated for any payment made by State Farm from the proceeds of any settlement that the injured party received. Stetina presented medical bills to State Farm on behalf of his daughter Diane and demanded payment of $10,000 medical payments under coverage under Stetina's policy with State Farm. The claim was denied, State Farm contending the covenant not to sue destroyed its subrogation rights against Lusins and violated the terms of the policy. Stetina filed suit against State Farm. The trial court found that Stetina, by entering into the covenant not to sue Lusins, violated the provisions of his State Farm policies and, as a result, Stetina's right to recover medical payments was extinguished. The Nebraska Supreme Court reversed, holding that an insurer has no right of subrogation against its own insured; consequently, because State Farm possessed no right of subrogation against Lusins, the execution of the covenant not to sue by Stetina in no way harmed or prejudiced State Farm. This being the case, Stetina was allowed to receive $10,000 from State Farm under the medical benefits provisions of the policy.
Dupre v. Vidrine, 261 So.2d 288 (La.App. 1972), writ refused,263 So.2d 48 (La. 1972), was a case involving suit by a physician, Dupre, for medical services rendered to Vidrine, his wife and child. Southern Farm Bureau Casualty Insurance Company was brought in as a third party defendant by Vidrine on the ground that Vidrine had a liability policy with Southern Farm which included medical benefits payment coverage. Vidrine was in an automobile accident with Guillory, also insured by Southern Farm. A settlement between Vidrine and Guillory was reached as a result of which Vidrine executed a written release of all claims against Guillory. Southern Farm contended that such release destroyed its subrogation rights against the tort-feasor Guillory, thereby extinguishing Southern Farm's liability to Vidrine for medical benefits payments. The Louisiana Court of Appeals rejected Southern Farm's position and held that it could not subrogate its own insured, Guillory; that where both vehicles involved were covered by liability policies issued by the same insurer, the release of the tort-feasor by the other driver did not extinguish the insurer's liability to that driver under the medical benefit payments coverage of the policy. This, because the release had destroyed the insurer's right to subrogation against the party responsible for the damages.
The Dupre case was later clarified in Norris v. Allstate Ins.Co., 293 So.2d 918 (La.App. 1974). The appellate court, distinguishing Dupre from Norris, determined that Southern Farm's position in the Dupre case was one of dual responsibility; one in tort as the result of Guillory's negligence; one in contract as because of the contract of insurance. Payment of one did not discharge the other. "Subrogation would not have taken place on payment of one obligation, since the co-existing obligation remained viable. Where no subrogation exists, there can be no impairment of subrogation rights."
By applying these decisions to the facts of this case, it is apparent that State Farm has no right to subrogate against its insured, Phillips. If subrogation were allowed under such circumstances, an insurer could pass the incident of loss, either partially or totally, from itself to its own insured, thus, permitting the insurer to avoid coverage which its insured had purchased. See Home Insurance Co. v. Pinski Bros.Inc., 160 Mont. 219, 500 P.2d 945 (1972).
We hold that under the facts of this case, State Farm had no right of subrogation against the tort-feasor Phillips. Since no right of subrogation existed, Moring's failure to execute the documents purporting to preserve that right in no way harmed or prejudiced State Farm. If there is no such right, there can be no harm done it. Norris, supra.
The judgment of the circuit court is reversed and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED. *Page 814 
MADDOX, FAULKNER, JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.