596 So.2d 261 (1992)
Catherine JOHNSON, Plaintiff-Appellee,
v.
Joseph DESELLE, et al., Defendants-Appellants.
No. 90-1006.
Court of Appeal of Louisiana, Third Circuit.
March 11, 1992.
Writ Denied June 19, 1992.
*262 McLure & Pickels, John McLure, Alexandria, for defendant/appellantState Farm.
Chris Roy, Jr., Alexandria, for plaintiff-appellee.
Christovich & Kearney, Thomas Cowan, New Orleans, for defendant/appelleeCity of Alexandria.
Gist, Methvin, Hughes & Munsterman, Steven Cook, Alexandria, for defendant/appelleeJoseph Deselle.
Before GUIDRY, J., and MARCANTEL and CULPEPPER, JJ., Pro Tem.
GUIDRY, Judge.
This suit concerns plaintiff's claim for fire damages to her home which occurred while the home was being renovated by defendant, Joseph Deselle d/b/a Deselle Builders. The fire occurred on December 16, 1985. Catherine Johnson's home was insured under a homeowners policy issued by State Farm Fire and Casualty Insurance Company (State Farm). Pursuant to the terms of plaintiff's policy, State Farm paid her $43,660 for the damage to the home and $32,907.13 for contents damage, for a total of $76,567.13.
On October 15, 1986, plaintiff sued Joseph Deselle, Deselle Builders, State Farm, as the alleged general contractor liability insurer of Deselle, and the City of Alexandria, as administrator of the Department of Housing and Urban Development (HUD) grant program under which Johnson's home was being renovated by Deselle Builders. Johnson originally sought $20,000, the difference between the amount previously collected from State Farm on her homeowners policy for damage to the home and the actual cost of repair, and $80,000 in general damages. By supplemental petition, plaintiff amended her demand to seek cost of restoration or replacement cost less reasonable depreciation, i.e., the sum of $81,800. State Farm's answer denied that it provided coverage for Deselle's liability. In the alternative, State Farm claimed offset.
The matter was tried to a jury. Plaintiff's suit against the City was dismissed. By directed verdict, the trial judge concluded that Joseph Deselle (Deselle Builders) was insured under a State Farm liability policy issued to Sirwelton Hobbs d/b/a H & H Contractors.[1] State Farm was cast in judgment by the jury in the total amount of $53,000, consisting of $43,000 for damage to plaintiff's home and $10,000 for her mental anguish. In addition, the court denied State Farm's claim that it should be allowed a credit or offset against the $43,000 portion of the judgment for the $43,660 it had previously paid Johnson pursuant to her homeowners policy. State Farm appeals and assigns the following errors:
"I. The Trial Court erred in applying the provisions of R.S. 22:636 to the issue of coverage under the policy issued by State Farm to Sirwelton Hobbs d/b/a H & H Contractors, rather than interpreting the provisions of the policy itself regarding who was an insured under the *263 policy and whether or not State Farm was estopped to deny coverage.
II. The Trial Court erred in failing to give State Farm Fire & Casualty Company credit for the amount of money paid by State Farm to Catherine Johnson for her structural loss ($43,660.00) which is more than the jury found the damage to the home (or its value) to be, which figure was $43,000.00, as a result of the subrogation provisions of the policy issued by State Farm Fire & Casualty Company to Catherine Johnson and as a result of the merging of the creditor and debtor relationship of State Farm Fire & Casualty Company as a result of State Farm Fire & Casualty Company being held to be the insurer of Joseph Deselle."
For the following reasons, which differ somewhat from those of the trial court, we affirm.

THE INSURANCE COVERAGE ISSUE
Sometime in March of 1985, Joseph Deselle contacted Sirwelton Hobbs seeking financial assistance to start his own construction business for the purpose of renovating homes under a HUD grant program. Under the program, which was administered by the City of Alexandria, a homeowner, qualified under HUD guidelines, could receive up to $10,000 in repairs in exchange for accepting a 10-year mortgage to bring his/her home up to Safety Code standards. If the homeowner remained in the renovated home for 10 years, the debt owed for the renovation work would be retired by HUD. Work under the program was performed by private contractors who were required to bid for each project.
Hobbs, who was a part owner with his two sons in H & H Contractors, agreed to provide tools and financing to Deselle in exchange for 10% of Deselle's income from each HUD project completed by Deselle. This arrangement between Hobbs and Deselle was known as "Deselle Builders". In order to bid for renovation projects, a HUD contractor was required to present proof of liability insurance coverage to the City of Alexandria. Deselle had no such coverage. Hobbs consulted his State Farm agent, Jack Harlan, to secure liability insurance for Deselle. Harlan determined that Deselle would be covered under the terms of an already existing policy issued by State Farm to Hobbs. The policy in question, State Farm # XX-XX-XXXX-X, effective from January 28,1985 through January 28, 1986, contained language which provided liability coverage for any partnership entered into by Hobbs. Harlan, as State Farm's agent, issued a "Certificate of Insurance" to the City of Alexandria on March 22, 1985 as proof that Deselle was covered under the aforementioned policy to the extent of its limits until January 28, 1986 (See Appendix). Deselle then took the certificate to Brenda Ray, Alexandria's Community Development Coordinator who, upon receipt of the certificate, qualified Deselle to bid as a prime contractor on HUD renovation projects.
During the summer of 1985, Deselle was able to secure several home renovation projects under the program and completed them using materials purchased on Hobbs' line of credit with local suppliers. However, Deselle apparently underbid some of the projects, and Hobbs was forced to put more money into the project to cover the losses which resulted. Finally, in August of 1985, after a dispute over money, Hobbs terminated the partnership and took his tools back from Deselle. Hobbs testified that he notified both Harlan and Ray of the partnership's termination and of his intention to cease providing insurance for Deselle. Neither Harlan nor Ray could recall any notification from Hobbs.
Following dissolution of the informal arrangement with Hobbs, Deselle successfully bid on the Johnson house project. He was awarded and entered into a Builder's Contract on October 8, 1985. Unknown to the City or State Farm, Deselle had apparently informally assigned the project to Willie Jones, who was described by Ray as "... never a prime contractor with Community Development. He was just a sub". On December 16, 1985, while construction workers were repairing Johnson's bathroom, the tile caught fire. The fire quickly *264 climbed the walls of the bathroom, shot through the roof and eventually caused major structural and smoke damage to plaintiff's home.
Prior to sending the case to the jury, the trial judge directed a verdict in favor of the plaintiff on the issue of insurance coverage. The court concluded that, since State Farm had certified Deselle as an insured, it had to comply with the notice of cancellation requirements of La.R.S. 22:636 in order to cancel such coverage. Since State Farm did not do so, the policy remained in effect as to Deselle on the date of the fire.
On appeal, State Farm argues that Deselle was not a named insured in the State Farm policy and, therefore, it did not have to comply with La.R.S. 22:636 since Deselle's coverage under the State Farm policy automatically terminated when Hobbs ended the informal arrangement with Deselle in August of 1985. Appellee, on the other hand, urges that since State Farm certified that Deselle was an insured, State Farm was obligated to comply with the procedures outlined in La.R.S. 22:636. At the time of the incident, the statute provided as follows:
"A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following:
(1) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than five days prior to the effective date of the cancellation.
(2) Like notice must also be so delivered or mailed to each mortgagee, pledgee, or other known person shown by the policy to have an interest in any loss which may occur thereunder.
B. The mailing of any such notice shall be effected by depositing it in a sealed envelope, directed to the addressee at his last address as known to the insurer or as shown by the insurer's records, with proper prepaid postage affixed, in a letter depository of the United States Post Office. The insurer shall retain in its records any such item so mailed, together with its envelope, which was returned by the Post Office upon failure to find, or deliver the mailing to the addressee.
C. The affidavit of the individual making or supervising such a mailing, shall constitute prima facie evidence of such facts of the mailing as are therein affirmed.
D. The portion of any premium paid to the insurer on account of the policy, unearned because of the cancellation and in amount as computed on the pro rata basis, must be actually paid to the insured or other person entitled thereto as shown by the policy or by any endorsement thereon, or be mailed to the insured or such person as soon as practicable following such cancellation. Any such payment may be made by cash, or by check, bank draft, or money order.
E. This Section shall not apply to temporary life insurance binders nor to contracts of life or health and accident insurance which do not contain a provision for cancellation prior to the date to which premiums have been paid, nor to the contracts provided in Part XV of this Chapter."
Plaintiff-appellee, in the alternative, asserts that, if the statute does not apply to Deselle, State Farm should be estopped to deny coverage.
Prior to the fire, State Farm, through its agent, issued the certificate (Appendix) which certified that Deselle was a "Policyholder" with liability limits as set forth thereon. Harlan was aware that this certificate was to be delivered to the City in connection with its HUD program.
Insurers are bound by the acts of their agents. Lindstrom v. Arnold, 421 So.2d 1178 (La.App. 2d Cir.), writ denied, 423 So.2d 1183 (La.1982); Bank of Coushatta v. Thomas, 378 So.2d 1041 (La.App. 2d Cir.1979). The obvious purpose of La. R.S. 22:636 is to require an insurer, prior to cancellation of an insurance contract, to afford notice of its intention to cancel existing *265 insurance coverage to its insured and others having an interest in any loss which may occur thereunder in order that such parties might take the necessary steps to protect their interests. The trial court presumably concluded that, although Deselle was not a named insured under the State Farm policy, under the particular circumstances of this case, State Farm was required to comply with the requirements of R.S. 22:636.
Although our statutory law and jurisprudence afford little or no guidance on the issue presented, we conclude that under the particular circumstances of this case, the coverage previously provided by State Farm to Deselle could not be terminated absent compliance with La.R.S. 22:636. In any event, it is clear from the record that, at the very least, State Farm is estopped to deny coverage since Deselle and the City relied to their detriment on the certificate as did the appellee. Deselle stated that, at the time of the fire, he thought he had insurance coverage under authority of the certificate. Johnson corroborated this by testifying that Deselle told her he had insurance and that he would make sure her home was repaired. Hobbs testified that he told Harlan and Ray that, as far as he was concerned, Deselle was no longer covered under his policy. Harlan and Ray could not recall being notified of such a change, although Harlan admitted that such a conversation could have occurred or that Hobbs may have notified one of Harlan's secretaries. In Travelers Insurance Company v. United States Fidelity and Guaranty Company, 168 So.2d 439 (La.App. 3rd Cir.1964), this circuit held, under similar circumstances, that the insurer was estopped to deny coverage. The court reasoned as follows:
"Estoppel, however, is a bar to the assertion of the truth. Plaintiff's primary argument is not that the policy has not been cancelled but that U.S.F. & G. should because of its conduct, be precluded from asserting that the policy was cancelled. Therefore, as to the plea of estoppel, LSA-R.S. 22:636 is inapplicable.
Equitable estoppel "arises where a person, by his acts, representations, or admissions, or even by his silence when it is his duty to speak, intentionally or through culpable negligence induces another to believe that certain facts exist, and the other person rightfully relies and acts on such belief, and will be prejudiced if the former is permitted to deny the existence of such facts." 31 C.J.S. Estoppel § 59. Shirey v. Campbell, La. App. 2 Cir., 151 So.2d 557 ...
Issuance of the certificate of insurance addressed to Catahoula Construction Company was made by U.S.F. & G. in pursuance of their business of writing workmen's compensation insurance. It would seem that U.S.F. & G. must have known that some reliance would be placed on the certificate for otherwise there would have been no purpose or reason for its issuance.
It is our view that having issued the certificate U.S.F. & G. incurred a duty to notify the addressee, Catahoula Construction Company, of the cancellation of the policy. No explanation has been offered for failure to give such notification.
From examining the stipulation, it is our opinion that Catahoula Construction Company did rely on the certificate and was lulled into a sense of false security due to the issuance of the certificate and the failure of U.S.F. & G. to notify it of cancellation. This reliance was detrimental in that had there been knowledge of the cancellation, Catahoula Construction Company could have required B & L to obtain other insurance or cease work on the project. The loss could thus have been avoided."
Similarly, State Farm knew that Deselle, Johnson and the City of Alexandria would rely on the certificate. This reliance was detrimental in that had there been knowledge of the termination of Deselle's insurance coverage, other coverage could have been secured or work could have been stopped on the project. For these reasons, we affirm the trial court's conclusion that coverage is afforded Deselle under the State Farm policy described in the certificate of insurance.

*266 THE CREDIT OR OFFSET ISSUE
On February 19, 1990, over four years after the fire, State Farm filed an amended answer in this suit claiming that it was contractually subrogated to the rights of Johnson since it had paid her $76,567.13 under her homeowners policy. In addition, State Farm also asserted that it was legally subrogated to plaintiff's rights for that amount. As contractual and/or legal subrogee, State Farm sought a credit or offset for the amount previously paid to Johnson under her homeowners policy for damage to her home ($43,660) against any amount that might be awarded in favor of Johnson and against State Farm in its capacity as the liability insurer of Deselle.
The trial court denied this offset claim, ruling that State Farm took no positive action to secure its rights to conventional subrogation. The trial court found that legal subrogation did occur. However, the court concluded that, in order to secure Johnson's rights under the concept of legal subrogation, State Farm would have had to assert its rights by either intervening in the present suit or filing a separate subrogation suit against Deselle and itself. Failure to do so, according to the trial court, barred State Farm's legal subrogation claim.
State Farm first asserts that it is conventionally subrogated to Johnson's rights based on the following language contained in her homeowners policy:
"Subrogation. An insured may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.
If an assignment is sought, an insured shall sign and deliver all related papers and cooperate with us in a reasonable manner.
Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others."
State Farm urges that the cases of Norris v. Allstate Insurance Company, 293 So.2d 918 (La.App. 3rd Cir.), writ refused, 296 So.2d 832 (La.1974), and A & M Pest Control Service, Inc. v. Fejta Construction Co., Inc., 338 So.2d 946 (La.App. 4th Cir. 1976), which present similar factual situations, are decisive of this issue.
In Norris, Allstate insured a building under a homeowners policy and a general contractor under a liability policy. The contractor negligently caused damage to the home, resulting in Allstate having to pay benefits under the homeowner's policy. The court looked to the policy language to determine if Allstate was subrogated to the rights of the plaintiff. The specific policy language under consideration in Norris provided that, upon payment of a fire loss, "... Allstate shall succeed to all of the Insured's rights of recovery therefor, and the Insured shall do whatever is necessary to secure such rights and do nothing after loss to prejudice them". Norris, supra, at 922. (Emphasis ours) Allstate was found to have acquired Norris' rights automatically upon payment of the loss.
In Norris, we observed that it was procedurally illogical to require Allstate to intervene since it was already a party to the suit, albeit in two separate capacities. However, we held that, since Allstate did succeed to plaintiff's rights by contractual subrogation, it attained the status of both debtor and creditor and, therefore, the obligation Allstate owed as liability insurer of the contractor was extinguished by confusion under the authority of La.C.C. arts. 2130, 2217.[2] A similar factual situation and result occurred in A & M Pest Control, supra.
As to State Farm's conventional subrogation claim, the Norris case is clearly distinguishable. Norris involved a subrogation right which transferred to the insurance company automatically upon payment of a fire loss. In the case sub judice, the clear language of the homeowners policy required State Farm to obtain from Johnson *267 an assignment of rights of recovery in order to secure its conventional subrogation rights. Contracts have the effect of law for the parties. La.C.C. art. 1983. When the words of a contract are clear and explicit, we are bound to interpret those words according to their generally prevailing meaning and can search no further for the parties' intent. La.C.C. arts. 2046, 2047.
State Farm was not automatically subrogated to Johnson's right of recovery upon payment of her fire loss. On the contrary, it was required by the clear wording of the homeowners policy to request an assignment of rights from Johnson. Having not done so, State Farm was never conventionally subrogated to Johnson's rights. Accordingly, it never attained the status of both debtor and creditor. It could not claim offset, credit, or extinguishment by confusion based on conventional subrogation since, due to the inaction of State Farm, the policy provision relied upon never took effect. Accordingly, the trial court properly denied State Farm's claim of offset based upon alleged conventional subrogation.
La.C.C. art. 1829 provides, in pertinent part:
"Subrogation takes place by operation of law:
. . . . .
(3) In favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment; ..."
As Johnson's homeowners insurer, State Farm paid a debt it owed with others, Deselle and State Farm in its capacity as liability insurer of Deselle.
The Supreme Court of Louisiana interpreted this statute in Aetna Insurance Company v. Naquin, 488 So.2d 950 (La. 1986). In that case, Aetna paid tenants of its insured, the building owner, under his homeowners policy for damages incurred through the fault of Naquin, an independent roofing contractor. Aetna then sought recovery of the $7,224.73 it had paid to the tenants from Naquin, whom it alleged caused the damage. In holding that "bound with others"[3] did not necessarily require solidarity on the part of the obligors, the Supreme Court reasoned:
"Support for the proposition that Aetna is bound with Naquin can also be found in the 1984 revision of the Civil Code (see fn. 2 supra). In the official comments to NA LSA-C.C. art. 1829(3), comment (d) states that, "An obligor is bound `with' another under this article regardless of whether his obligation arises from the same act as the obligation of the other or from a different act." In this case Aetna was bound with Naquin for the damages to the tenants. Aetna was bound for a different reason than Naquin but they were bound for the same thing. It is unnecessary to examine the relationship of the parties for solidarity as we have concluded that LSA-C.C. art. 2161(3) does not require solidarity. Therefore we hold that Aetna, having paid a debt which they were bound with Naquin, is entitled to be legally subrogated to their insureds' breach of contract action against Naquin."
Aetna, supra, at 954.
Likewise, State Farm, in its capacity as homeowners insurer of Johnson, was also bound with Deselle and itself in its capacity as liability insurer of Deselle to pay for the damages to Johnson's home. However, the mere fact that State Farm, in its capacity as Johnson's homeowners insurer, was bound does not in and of itself trigger the legal subrogation of State Farm to the rights of Johnson. The further requirement that State Farm as homeowners insurer must have "recourse against those others as a result of the payment" must be *268 satisfied. La.C.C. art. 1829. On this point, Professor Litvinoff recently commented:
"... for legal subrogation to operate the obligor must have a recourse against the other obligors with whom or for whom he is bound. That requirement of the Louisiana Civil Code is clearer than the one found in traditional law, according to which an obligor benefits from legal subrogation if he pays a debt he had an interest in discharging." Litvinoff, Subrogation, 50 La.L.Rev. 1143 (1990) at 1170, 1171.
As to this requirement, Aetna and the present case are distinguishable. In Aetna, the insurance company clearly could pursue its claim for recovery of the payment from Naquin. In the case sub judice, however, State Farm is both the homeowners insurer of Johnson and the liability insurer of Deselle. It has no recourse against Deselle since it is also his insurer, and it logically has no recourse against itself. Stated another way, the fact that it insures Deselle precludes State Farm from seeking any recourse in its capacity as Johnson's homeowners insurer from Deselle and it has no recourse against itself acting in a different capacity. Since State Farm has no recourse against "those others", legal subrogation did not take place by operation of law under La.C.C. art. 1829(3).
It then logically follows that, since State Farm never acquired the rights of Johnson under either contractual or legal subrogation, it never achieved the status of both debtor and creditor. Thus, State Farm cannot claim extinguishment by confusion. For the same reason, it cannot claim a credit or offset for the amount paid under the homeowners policy.
For the above and foregoing reasons, the judgment of the trial court in favor of plaintiff, Catherine Johnson, and against defendants, Joseph Deselle and State Farm Fire and Casualty Insurance Company, is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] While the actual policy names as insured "Sirwelton Hobbs d/b/a H & R Contractors", testimony at trial revealed that the true name of the enterprise was H & H Contractors.
[2] La.C.C. arts. 2130, 2217 on extinguishment by confusion were redesignated as La.C.C. art. 1903 in 1984. La.C.C. art. 1903 reads as follows:

"When the qualities of obligee and obligor are united in the same person, the obligation is extinguished by confusion".
[3] The Supreme Court in Aetna actually interpreted La.C.C. art. 2161(3), applicable at the time of the incident in that case. The substance of the article was redesignated as La.C.C. art. 1829 by the 1984 Obligations revision. The old article contained the language "bound with others", while the new article contains the language "owes with others". The different wording does not change the substance of the law.