THE TRAVELERS INDEMNITY COMPANY, a *Corporation*

*v.*

EVELYN RADER, *et al.,* AND NATIONWIDE MUTUAL INSURANCE COMPANY, a *Corporation*

(No. 12762)

Submitted January 14, 1969.      Decided March 4, 1969.

*Jenkins, Schaub & Fenstermaker, C. Robert Schaub, Myles & Myles, T. E. Myles,* for appellant.

*Mahan, Higgins, Thrift & Graney, R. J. Thrift, Jr.,* for appellees.

BROWNING, JUDGE:

The Travelers Indemnity Company, a corporation, hereinafter referred to as plaintiff, instituted this declaratory judgment proceeding in the Circuit Court of Fayette County, West Virginia, against the defendants praying for a declaration of the rights, duties and liabilities of the parties under a subrogation agreement contained in a policy of insurance issued by plaintiff and for coercive relief. The facts have been stipulated by counsel and are not in dispute.

The defendant Gravelys were the insureds under a policy of insurance issued by the plaintiff which provided in part:

"Coverage B - - - Medical Payments

"To pay all reasonable medical expense incurred within one year from the date of accident:

\* \* \*· \*

"DIVISION 1: To or for the named insured and each relative who sustains bodily injury, caused by accident, while occupying or through being struck by an automobile;

\* \* \* \*

"18. SUBROGATION. In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefore against any person or organization and, with respect to Coverage B, all the rights of recovery therefore which the insured person or any one receiving such payment may have against any person or organization. The insured, or with respect to Coverage B such person, shall execute and deliver instruments and papers, do whatever else is necessary to secure such rights and shall do nothing after loss to prejudice such rights."

On February 1, 1965, the defendant Gravelys were injured as a result of the negligent operation of an automobile by the defendant Evelyn Rader, which automobile was covered by a policy of liability insurance issued by the defendant Nationwide Mutual Insurance Company. The defendant Hobart Thomas is an employee and adjuster of the defendant Nationwide Mutual Insurance Company.

As a result of the collision, the Gravelys incurred medical expenses totalling $1,249.94 and made claims against the plaintiff under the medical payment provision of their policy. Plaintiff recognized its obligation to the Gravelys under its policy and corresponded with plaintiffs in regard thereto during the months of March, May and September of 1965. In all of this correspondence the plaintiff made reference to the subrogation provision of its policy and sent copies of the correspondence to the attorneys representing the Gravelys and to Hobart Thomas as representative of Nationwide Mutual Insurance Company. On October 1, 1965, plaintiff paid the amounts due the Gravelys on the basis of statements of claim made by them individually. These statements, filed with the complaint as plaintiff's exhibits No. 1 and 2, contained the following provision:

"For the consideration of the above payment the undersigned agrees that:

* * * *

"2. The Company is subrogated to the right of recovery of the undersigned to the extent of the payment made against any person or organization

and warrants that he shall do nothing and has not done anything to prejudice such rights.

\* \* \* \*"

Thereafter on November 10, 1965, the defendant Nationwide paid to the Gravelys $5,000 in satisfaction of all liability which might have existed in their favor against Nationwide's insured in return for which the Gravelys executed an unconditional release. It is not denied by Mr. Thomas that he was aware of the plaintiff's claim of subrogation but he states that such claim was not honored because his company entertained serious doubts as to the validity of such claims in West Virginia. It is also undisputed that Nationwide received no consideration from the plaintiff in regard to the matter.

The trial court on January 24, 1968, on motion of the defendants dismissed the complaint as against all defendants to which action this Court granted an appeal on September 9, 1968. No reason is assigned by the trial court for such action but it is contended in plaintiff's brief that such was done on the grounds of public policy. Errors assigned in this Court relate to (1) the dismissal of the action as against the Gravelys, (2) the dismissal of the action as against Thomas and Nationwide, (3) the dismissal of the action as against the Raders, and (4) in holding that the subrogation agreement is not enforceable because it is contrary to the public policy of West Virginia.

This Court perceives no error in the trial court's ruling wherein the action was dismissed as to the Raders. This appeal was granted for the purpose of deciding whether upon the facts of this case the action by the plaintiff would lie against the Gravelys. A decision of that question requires a determination of whether the subrogation provision of the policy was valid with regard to the medical expenses for which the Gravelys had been paid prior to the time they settled their claims against Nationwide, their claims being settled for the sum of $5,000 which included unconditional releases as to hospital and medical expenses and property damage as well as personal injuries received in the collision. The language of the subrogation provision

of this policy is clear and unambiguous. The agreement embodied in it between the plaintiff and the Gravelys is without ambiguity and there is no question raised as to fraud or deception being practiced upon the insured parties. Unless such a provision in an insurance policy, as it relates to medical and hospital expenses constitutes an assignment of an unassignable tort claim or is otherwise against the "public policy" of this State then it must stand. There is nothing in the Constitution of this State or any legislative enactment or, as far as this record shows, any regulation of the Insurance Commissioner of West Virginia which invalidates this subrogation clause. Counsel for the defendants rely upon what they assert to be the rule in this jurisdiction with reference to the assignability of a claim for personal injury. The common law with regard to that question was to the effect that such a claim does not survive the death of the insured person and it was not assignable and inasmuch as this Court has apparently not dealt with the precise question presented in this case, we have looked to other jurisdictions for possible guidance.

It would appear that at least three lines of decisions have developed elsewhere. They are: (1) the view that subrogation is invalid where it amounts to an assignment of a claim for personal injuries, (2) the view that a claim for personal injuries is assignable, and (3) the view that a subrogation clause is invalid only insofar as it constitutes an assignment of a personal injury claim rather than a claim for medical or hospital expenses. In the very recent case of *Busch* v. *Home Insurance Company*, (1967) 97 N. J. Super 54, 234 A 2d 250, the Court rejected the plaintiff's contention that to allow medical payments subrogation violates the principle against assigning a personal injury claim, and violates the principle against splitting a cause of action. The court ruled otherwise stating that an assignment "is a transfer by action of the transferor, whereas subrogation is an equitable right which arises out of the facts and which entitles the subrogee to collect that which he has advanced." Also, in *DeCespedes* v. *Prudence Mut. Cas. Co.* (Fla. App. 1966) 193 So. 2d 224, aff'd (Fla) 202 So. 2d 561, the Florida court, in rejecting the argument

that a subrogation clause as to medical payments amounts to an attempt to assign a claim for personal injuries, an assignment invalid under common law, held: "The concept of subrogation is distinct from that of a mere assignment. Subrogation is a 'creature of equity having for its purpose the working out of an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it . . . a wrongdoer who is legally responsible for the harm should not receive the windfall of being absolved from liability because the insured had had the foresight to obtain, and had paid the expense of procuring, insurance for his protection; since the insured has already been paid for his harm, the liability of the third person should now inure for the benefit of the insurer.' 16 Couch, Cyclopedia of Insurance Law, § 61:18 (2nd Ed. 1964)." The court went on to say that: "Subrogation serves to limit the chance of double recovery or windfall to the insured, and, when exercised, tends to place the primary liability upon the tortfeasor, where it belongs." and concluded, "So long as subrogation, as applied to this medical pay provision, serves to bar double recovery, it should be upheld." There are decisions of other courts with regard to this precise question and they are contained in an annotation in 19 A.L.R. 3d beginning at page 1054.

There is nothing inherently invidious about the word "subrogation". In *Holbert v. Safe Insurance Company,* 114 W. Va. 221, 171 S. E. 422, the contention was made that the release by an insured of a tortfeasor of any loss over and above the amount of insurance, while explicitly protecting the rights of the insured and insurer to proceed against such tortfeasor to the extent of the insurance, under the general rule, operated to release the whole of the claim. In denying such effect this Court said: "If that rule were applied here, then the Standard Oil Company would be fully discharged, the insurer's right to subrogation in the absence of fraud would be destroyed, and recovery by the insured under the policies prevented. We think, however, that the circumstances here fall within a well recognized exception to the rule just stated, because that rule is for

the benefit of the contemplated defendant and is not to be applied where such defendant, as here, has expressly consented to the splitting of the cause of action against it." If that part of the subrogation provision between the insurer and the insured is of such a nature that it should be struck down as against the public policy of this State, it is the view of this Court that such a decision is for the Legislature or perhaps the Insurance Commissioner whom the Legislature has invested with great authority regarding the provisions of policies of insurance issued by those who are licensed to do business in this State.

We believe there is a clear distinction between an assignment of a tort claim and subrogation of medical payments under a valid contract and we are of the opinion that the subrogation clause in question is valid to the extent that it subrogates to the plaintiff insurance company the right to be reimbursed by the Gravelys for the amount of money theretofore paid to them for hospital and medical expenses incurred as a result of their injuries inasmuch as the Gravelys had entered into a final agreement with another insurance company by which they were paid a sum of money which included the same hospital and medical expenses.

In view of our holding that the subrogation clause in the instant case does not constitute an "assignment" of an otherwise unassignable tort claim we need not delve into the question of whether such is against the public policy of this State. Suffice to say that the legislative enactment of the provisions of Code, 55-7-5 and 6, as amended, which pertain to the survivability in various situations of a wrongful death action and the recovery of hospital, medical and funeral expenses therein, and Code, 55-7-8 and 8a, as amended, which provide for the survival and revival of certain actions which did not survive at common law, is persuasive upon this question. In so stating we are fully aware of, and fully approve, the holding of this Court in *Hereford* v. *Meek,* 132 W. Va. 373, 52 S. E. 2d 740, that these statutes relate only to the survivability and/or revivability of certain specific claims and in no way alter or

amend the common law with respect to the assignability of such claims. However, we are constrained to believe that by the legislature's encroachment upon the common law in these specific instances there is no compelling public policy which would deny the subrogation clause involved herein.

As heretofore stated, the precise issue presented upon this appeal is whether the action will lie against the Gravelys under the subrogation provision. We have held that it will and that we perceive no error in the trial court's action in dismissing the Raders. However, the question of liability on the part of the defendants Thomas and Nationwide, who with notice of the plaintiff's right to subrogation, chose to ignore it, has not been briefed and argued in this Court and we do not decide the same. We, therefore, hold that the judgment of the Circuit Court of Fayette County of January 24, 1968, is affirmed insofar as it dismissed the Raders from this proceeding but is reversed as to the dismissal of the defendant Gravelys, Thomas and Nationwide and the case is remanded for such further proceedings as the parties may be advised to take, not inconsistent with the views expressed in this opinion.

*Affirmed in part;*
*reversed in part;*
*and remanded.*