455 S.E.2d 803

**Homer RICHARDS and Mary Richards, Plaintiffs Below and Appellees,**

**v.**

**ALLSTATE INSURANCE COMPANY, a Corporation, Defendant Below and Appellant.**

**No. 22170.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 17, 1995.

Decided Feb. 17, 1995.

---

John H. Bicknell, Menis E. Ketchum, Greene, Ketchum, Bailey & Tweel, Huntington, for appellees.

Benjamin L. Bailey, Stuart A. McMillan, Bowles, Rice, McDavid, Graff & Love, Charleston, for appellant.

CLECKLEY, Justice:

Allstate Insurance Company (Allstate), the defendant below and appellant herein, appeals the final order of the Circuit Court of Wayne County entered on September 7, 1993. The final order denied Allstate's motion for summary judgment and granted summary judgment in favor of Homer and Mary Richards, the plaintiffs below and appellees herein. The final order provided that Allstate had no right of subrogation against the tortfeasor, whom it insured, and Allstate had no right to be reimbursed for medical expenses it paid the plaintiffs whom it also insured. On appeal, Allstate argues it is entitled to receive reimbursement for the medical payments made to the plaintiffs under their policy to prevent them from receiving a double recovery.

On April 4, 1992, the plaintiffs were in an automobile accident and received injuries.[1] The plaintiffs' vehicle collided with a vehicle driven by Elisha Workman, the tortfeasor. Allstate provided the liability insurance on both vehicles. Pursuant to their policy, Allstate paid the plaintiffs $2,000 each for medical bills they incurred as the result of the accident.[2] Subsequently, the plaintiffs settled their case with Ms. Workman for $59,-000.[3] Ms. Workman's liability limit was $300,000.

Allstate sought repayment of the $4,000 it paid the plaintiffs under their policy from the settlement the plaintiffs made with the tortfeasor. The plaintiffs filed a declaratory judgment action with the circuit court requesting it find Allstate has no right to reimbursement of the medical payments it made to them under their policy because Allstate could not enforce a right of subrogation against its own insured tortfeasor. Thereafter, both parties filed motions for summary judgment, and summary judgment was granted on behalf of the plaintiffs.

■ This Court generally has recognized that the right of subrogation with regard to medical payments is valid and is not in violation of West Virginia's public policy. In the Syllabus of *Travelers Indemnity Co. v. Rader*, 152 W.Va. 699, 166 S.E.2d 157 (1969), we stated:

"A provision in an insurance policy providing for the subrogation of the insurer to the rights of the insured to the extent that medical payments are advanced to such insured by the insurer is distinct from an assignment of a tort claim and is not invalid as against the public policy of this State."

*See also* Syllabus Point 1, *Nationwide Mut. Ins. Co. v. Dairyland Ins. Co.*, 191 W.Va.

243, 445 S.E.2d 184 (1994); Syllabus Point 1, *Federal Kemper Ins. Co. v. Arnold*, 183 W.Va. 31, 393 S.E.2d 669 (1990).

Allstate argues that because subrogation is a right in equity, it should be reimbursed the $4,000 it advanced the plaintiffs to prevent them from receiving a double recovery for their medical expenses. In addition, Allstate asserts that the fact it insured the tortfeasor should make no difference in determining whether it should receive reimbursement. In deciding this matter, we find there are competing public policy interests to consider; and, after weighing the interests, we decline to adopt Allstate's position.

■ We find there is an important difference between a situation where an insurance carrier seeks to assert a right of subrogation against a third-party tortfeasor to whom the subrogee insurance carrier owes no duty and a situation where an insurance carrier seeks to assert a right of subrogation against a tortfeasor to whom it also owes a duty to defend. In essence, it creates a situation where an insurance carrier is claiming a right of subrogation against itself. As indicated in 16 George J. Couch, Ronald A. Anderson, and Mark S. Rhodes, *Couch on Insurance 2d* § 61:136 at 195 (Rev. ed. 1983), "[n]o right of subrogation can arise in favor of the insurer against its own insured, since by definition subrogation arises only with respect to rights of the insured against third persons to whom the insurer owes no duty." (Footnote omitted). One of the most obvious public policy reason for this rule is to prevent an insurance carrier from having a conflict of interest.

This issue was addressed and similarly resolved by the Supreme Court of Nebraska in *Stetina v. State Farm Mutual Automobile Insurance Co.*, 196 Neb. 441, 243 N.W.2d 341

1. The parties stipulate to most of the facts of this case.

2. In form letters provided by Allstate, the plaintiffs were informed that if they submitted a "Medical Payments Claim," they must repay Allstate the amount received from "the proceeds of any bodily injury liability settlement." The plaintiffs signed and returned the letters. As counsel for the plaintiffs correctly indicates, these letters are not binding and have no effect

on the plaintiffs' right to their medical payments. Under the terms of the policy, Allstate was obligated to pay these expenses regardless of the plaintiffs' signatures on the forms. Therefore, the plaintiffs received no consideration for signing the letters and the letters are unenforceable.

3. Of this amount, $35,000 was paid to Homer Richards and $24,000 was paid to Mary Richards.

(1976). In *Stetina,* the plaintiff's minor daughter received injuries while she was a passenger in a car that was struck by another car driven by the tortfeasor. Both the plaintiff and the tortfeasor were insured by State Farm Mutual Automobile Insurance Company (State Farm).

The claim was settled with State Farm for $50,000 in satisfaction of all claims the minor daughter and her parents had against the tortfeasor. In return, the plaintiff agreed not to sue the tortfeasor. Thereafter, the plaintiff brought an action against State Farm for $10,000 under his own insurance policies for coverage of medical expenses. State Farm denied the claim and asserted the plaintiff prejudiced its right of subrogation by agreeing not to sue the tortfeasor. The plaintiff argued he could not prejudice State Farm's right of subrogation because it could have no right against the tortfeasor whom it also insured.

The court in *Stetina* agreed with the plaintiff and, in so doing, quoted *Home Insurance Co. v. Pinski Brothers, Inc.,* 160 Mont. 219, 225–26, 500 P.2d 945, 949 (1972), stating, *inter alia:*

> " 'To permit the insurer to sue its own insured for a liability covered by the insurance policy would violate these basic equity principles, as well as violate sound public policy. Such action, if permitted, would (1) allow the insurer to expend premiums collected from its insured to secure a judgment against the same insured on a risk insured against; (2) give judicial sanction to the breach of the insurance policy by the insurer; (3) permit the insurer to secure information from its insured under the guise of policy provisions available for later use in the insurer's subrogation action against its own insured; (4) allow the insurer to take advantage of its conduct and conflict of interest with its insured; and (5) constitute judicial approval of a breach of the insurer's relationship with its own insured.' " 196 Neb. at 451, 243

N.W.2d at 346. (Emphasis deleted from *Stetina* ).

In *Home Insurance,* 160 Mont. at 226, 500 P.2d at 949, the Supreme Court of Montana quoted *Chenoweth Motor Co., Inc. v. Cotton,* 2 Ohio Misc. 123, 124, 207 N.E.2d 412, 413 (1965), that reasoned " 'it is axiomatic that [an insurance company] has no subrogation rights against the negligence of its own insured.' " (Bracketed material in *Home Insurance* ).

The Nebraska court affirmed its decision in *Stetina* in *Control Specialists Company, Inc. v. State Farm Mutual Automobile Insurance Co.,* 228 Neb. 642, 423 N.W.2d 775 (1988). In *Control Specialists,* the court held "where two motor vehicles covered by the same insurance carrier collide, the nonnegligent driver may recover for damage to his vehicle under the negligent driver's liability insurance and again under the property damage clause of his own insurance policy unless the nonnegligent driver's policy limits such recovery." The insurance carrier argued its policies were indemnity policies and " 'were not intended' to provide more than reimbursement to the extent of actual loss[.]" 228 Neb. at 644, 423 N.W.2d at 777. However, the court found that, although the insured plaintiff's policy could have contained reimbursement language limiting the coverage to unreimbursed losses, it did not. Therefore, the court concluded the insured plaintiff could collect under its own policy for property damage.

The present case raises a similar issue in that Allstate argues the question is not whether there is a right of subrogation, but instead is whether Allstate can receive reimbursement of the medical payments it made to the plaintiffs. However, as in *Control Specialists,* the plaintiffs' policy does not contain any language providing for reimbursement. It only contains language with regard to subrogation. In fact, Allstate argues its position with regard to the subrogation clause.[4] Although Allstate could have placed

---

4. In addition to arguing a right of subrogation, Allstate states in its brief that, prior to settlement with the tortfeasor, the claims adjuster for the tortfeasor wrote plaintiffs' counsel and informed him that Allstate had a right of subrogation with

regard to the medical payments made to the plaintiffs. The claims adjuster asked whether the plaintiffs would accept a settlement check minus the amount made for medical payments. This

language in its policy providing for reimbursement in this type of situation, it did not.[5] Therefore, the focus of the case must rest on Allstate's alleged right of subrogation and any rights the plaintiffs have by virtue of the terms of the contract.

Allstate attempts to bypass the plaintiffs' arguments by asserting the plaintiffs do not have standing to argue the issue of whether Allstate has a right of subrogation against the tortfeasor. We reject Allstate's position because, as previously discussed, Allstate is the one that must rely upon the subrogation clause in its policy with the plaintiffs. Allstate is entitled to reimbursement only if it can maintain a valid subrogation claim. Thus, we conclude the plaintiffs have the right to make relevant arguments with regard to the subrogation clause in their own policy. It simply is logical, under the circumstances of this case, that Allstate cannot implicitly use the subrogation clause to make a claim against the plaintiffs that it initially could never have made against the tortfeasor.

Allstate argues that under *Federal Kemper, supra,* it has an equitable right to receive reimbursement of the medical payments it made to the plaintiffs. In *Federal Kemper,* the Federal Kemper Insurance Company brought an action against the estate of an individual for reimbursement of money it paid for medical or funeral expenses. Without giving notice to Federal Kemper, the administratrix of the estate settled with the tortfeasor and was paid by the tortfeasor's insurance carrier. Federal Kemper's insurance policy contained a subrogation clause that stated, in part, that if it made "a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, [Federal Kemper] shall be subrogated to that right." 183 W.Va. at 32, 393 S.E.2d at 670. The clause further provided if damages are recovered from another, the person to whom payments are made must hold the proceeds of the damages in trust and reimburse Federal Kemper to the extent it made payments under its policy.

Under the facts presented in *Federal Kemper,* we concluded Federal Kemper was entitled to reimbursement. However, we find the present case is distinguishable because *Federal Kemper* did not address the additional policy concern at issue in this case, that is, permitting an insurance carrier to receive reimbursement via a right of subrogation against its own insured tortfeasor. Therefore, the present case is not controlled by *Federal Kemper.*

In a case that presents a similar issue as the case at bar, the Supreme Court of Alabama in *Moring v. State Farm Mutual Automobile Insurance Co.,* 426 So.2d 810, 813 (Ala.1982), concluded that the insurance carrier "had no right of subrogation" against its own insured who was the tortfeasor. In *Moring,* the insurance carrier informed its insured plaintiff it would pay her $13,000 in medical benefits if she agreed to sign certain documents "that would protect State Farm's subrogation rights." 426 So.2d at 811. The plaintiff refused to sign the documents based

---

offer was refused and a check in the full amount of the settlement was sent to the plaintiffs.

**5.** The relevant language with regard to subrogation is found in the "GENERAL CONDITIONS" section of the policy and provides:

"Upon payment under Section I [liability protection], Section III [protection against loss to the automobile], or Part 1 of Section IV [automobile medical payments insurance], Allstate shall be subrogated to the extent of such payment to all of the insured's rights of recovery therefor. The insured shall do whatever is necessary to secure such rights and do nothing before or after loss to prejudice such rights."

Part 1 of Section IV states, in relevant part, "COVERAGE CC—Automobile Medical Payments Insurance[.] Allstate will pay all reasonable expenses for necessary medical [treatment] ... to or for an insured who sustains bodily injury caused by an accident[.]" Part 1 also provides:

"[T]here shall be no duplication of payments under Coverage AA [Bodily Injury] and CC [Medical Payments] of *this policy* and all payments made to or on behalf of any person under this Part shall be deemed to have been advanced to such person against the damages such person is entitled to against an insured under Coverage AA of this policy." (As amended; emphasis added).

Except for the subrogation language, the policy contains no other language to the effect the insurance carrier is entitled to reimbursement from its insured when its insured receives a settlement from or judgment against a tortfeasor.

upon the belief the insurance carrier would then attempt to collect the money it paid in medical benefits from a $25,000 settlement the plaintiff previously made with the tortfeasor with the consent of the tortfeasor's insurance carrier who also insured the plaintiff. In making its decision, the court cited *Stetina, inter alia,* and held the plaintiff could not prejudice the insurance carrier's right of subrogation by refusing to sign the documents because no right of subrogation could exist against a tortfeasor it also insured.[6]

■ Allstate further claims it goes to great lengths to meet the separate duties a case such as the one at bar presents. For instance, it establishes two files, one for liability coverage and one for medical payments. In addition, separate adjusters are assigned to the claims, and they deal with one another as if they were dealing with an adjuster from another insurance company. However, even under this procedure, the insurance carrier still is attempting to invoke a right of subrogation against its own insured. This situation creates an inherent conflict of interest. The best way an insurance carrier can prevent a situation like the present one from arising is to place clear and unambiguous language in its policy providing for the reimbursement of medical payments it may advance to its insured to the extent such medical payments are compensated by a settlement with or judgment against a tortfeasor whom it also insures. An insurance carrier may not rely upon a subrogation clause in its policy to receive reimbursement when it also insures the tortfeasor.

Finally, Allstate argues that to permit the plaintiffs a double recovery would allow them to receive an amount they did not bargain for in the contract. Allstate maintains its premiums are calculated under the presumption it will be reimbursed for medical payments it may advance to its insured. The plaintiffs dispute this claim by asserting medical payment coverage is optional and not based on fault. Thus, the plaintiffs contend that, even if they were at fault, Allstate is required to make medical payments to them and has no right of subrogation against them. Regardless of the merits of Allstate's contention with regard to its calculation of premiums for medical payments, Allstate is bound by the provisions of its own policy; and, if it desires to prevent double recoveries, it should place reimbursement language in its policies as previously discussed. For the same reason, we reject Allstate's argument that the circuit court's ruling creates a situation where plaintiffs are treated differently depending upon whether the tortfeasor has the same insurance carrier as the plaintiffs. If they are treated differently by receiving double recoveries, it is by virtue of the lack of reimbursement language in the insurance policies.

In conclusion, we understand Allstate's concern with regard to preventing insureds from receiving double recoveries; nevertheless, we hold the best way to deal with this problem is not to permit an insurance carrier to assert a right of subrogation against one of its own insured, but rather to have an insurance carrier insert clear and unambiguous language with regard to reimbursement in its policies. For the foregoing reasons, we affirm the final order of the Circuit Court of Wayne County.

Affirmed.

NEELY, C.J., deeming himself disqualified, did not participate in the consideration or decision of this matter.

BROTHERTON, J., did not participate.

FOX and STEPHENS, Judges, sitting by temporary assignment.

---

6. Allstate argues both *Stetina* and *Moring* are distinguishable from the present case because the insured plaintiffs in those cases were not fully compensated for their injuries by the settlement. We find no basis for Allstate's contention. Both cases state the settlements were made in full satisfaction of the insureds' claims against the tortfeasors, and neither court mentioned nor relied upon any findings that the insureds were not fully compensated by the settlements.