DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Plaintiff-appellant Marlene Craven appeals a grant of summary judgment in favor of defendant-appellee Nationwide Mutual Insurance Company ("Nationwide"). We affirm in part, reverse in part, and remand.
 I.
On July 15, 1992, Craven was involved in a motor vehicle accident with James Cummings. Craven and Cummings were both insured by Nationwide. On June 9, 1994, Craven filed suit against Cummings. As Cummings' insurer, Nationwide defended Cummings in the personal injury suit.
On July 5, 1995, Craven filed a claim with Nationwide for $6,567.09 in accident-related medical bills pursuant to the medical payments provision ("med-pay") of her insurance policy. The med-pay provision reads:
We will pay:
 1. Reasonable expenses incurred for necessary medical and funeral services for:
a) you; or
b) any relative;
 for accidental bodily injury suffered while occupying your auto.
 The expenses must be incurred within one year following the accident.
2. Up to limits stated in the policy Declarations.
3. Regardless of who is at fault in the accident.
 (Emphasis sic.) Thus, Nationwide was required to pay Craven's medical expenses regardless of fault, as long as such expenses were reasonable and resulted from an injury that was incurred while occupying the insured vehicle. However, despite concluding that Craven's expenses were reasonable and related to the accident, Nationwide refused to pay Craven's med-pay claim. Instead, on November 3, 1995, the Nationwide adjuster handling the Cummings defense offered $15,000 to settle both the med-pay claim and personal injury claim. This amount included $11,717.17 for bodily injury and $3,282.83 for medical bills (one-half of Craven's med-pay claim). Craven rejected the offer.
On November 20, 1995, the personal injury claim proceeded to arbitration and Craven was awarded $15,000. Neither party appealed the arbitration award, which was reduced to judgment and paid-in-full by Nationwide.
On January 10, 1996, Craven filed suit against Nationwide, seeking declaratory relief and specific performance requiring Nationwide to pay $6,567.09 in accident-related medical bills pursuant to the med-pay provision of her insurance policy. Also, Craven sought damages for Nationwide's bad faith in the handling of her med-pay claim.
Nationwide moved for summary judgment on all counts, arguing that the subrogation clause in Craven's policy entitled Nationwide to reimbursement for any medical expenses it paid to Craven. The subrogation clause reads:
We have the right of subrogation under the:
* * *
c) Medical Payments;
* * *
 coverages in this policy. This means that after paying a loss to you or others under this policy, we will have the insured's right to sue for or otherwise recover such loss from anyone else who may be liable. Also, we may require reimbursement from the insured out of any settlement or judgment that duplicates our payments. These provisions will be applied in accordance with state law. Any insured will sign such papers, and do whatever else is necessary, to transfer these rights to us, and will do nothing to prejudice them.
 (Emphasis sic.) Thus, Nationwide argued, Craven was fully compensated by the personal injury award and was not entitled to any further medical payments. Additionally, Nationwide argued that it was reasonable to withhold the medical payments in order to pay both claims at once. This avoided needless paperwork and administrative costs associated with paying the med-pay claim separately and subsequently seeking reimbursement from the personal injury award. The trial court granted Nationwide summary judgment on all counts and Craven appeals.
Craven's assignments of error have been rearranged for convenience.
 II.
First, we set forth the standard for awarding summary judgment. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Based on the pleadings, evidence, and stipulations offered, when viewed in a light most favorable to the non-moving party, reasonable minds must only be able to reach a conclusion that is adverse to the non-moving party. Id.
 III.
Next, we address Craven's fourth assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF/APPELLANT IN FINDING THAT AN INSURER HAS A RIGHT TO SUBROGATE AGAINST ONE OF ITS INSUREDS.
Because Nationwide insured both Craven and Cummings, Craven argues that Nationwide should not be permitted to claim subrogation and thereby offset the med-pay claim against the personal injury award. In support of this argument, Craven cites Chenoweth Motor Co., Inc. v. Cotton
(1965), 2 Ohio Misc. 123, for the rule that an insurer cannot seek recovery from its own insured pursuant to a subrogation clause. In Chenoweth, the tortfeasor was involved in an automobile accident while negligently operating an automobile loaned to him by Chenoweth Motor Co. Chenoweth had a collision insurance policy on the automobile with Ohio Farmers Insurance Co. The torteasor, as bailee of the insured automobile, was included as an additional insured under the Ohio Farmers policy. Ohio Farmers paid a portion of the property damages pursuant to the policy, then joined Chenoweth in filing suit against the tortfeasor to recover the amounts paid under the policy. However, because the tortfeasor was a co-insured, the Chenoweth court held that Ohio Farmers had no right to subrogation: "If the instant action by Ohio Farmers Insurance Company were to be allowed, it would clearly be permitting an insurance company to avoid a coverage of its own insured, which the insured had previously paid for." Id. at 124. See also Aetna Cas. Sur. Co. v. Urban Imperial Bldg. Rental Corp. (1987), 38 Ohio App.3d 99, 100.
Craven argues that the Chenoweth rationale should be applied to the instant case to prevent Nationwide from subrogating itself to Craven's personal injury claim against Cummings, its own insured. Craven contends that if Nationwide has no right to subrogate, then she is entitled to receive medical payments in addition to the personal injury award. Nationwide, on the other hand, distinguishes Chenoweth from the instant case by pointing out that the plaintiff and tortfeasor in Chenoweth were co-insureds under the same policy, while Craven and Cummings are insured by Nationwide under different policies. Craven argues that, despite the fact that they are insured under different policies, Nationwide still should not be permitted to subrogate against its own insured. In support of extending Chenoweth to the multiple-policy context, Craven cites Keystone Paper Converters,Inc. v. Neemar, Inc. (E.D.Pa. 1983), 562 F. Supp. 1046, wherein the insurer was not permitted to subrogate against the tortfeasor when it insured the tortfeasor under a separate liability policy. See, also, Home Ins. Co. v. Pinsky Bros., Inc. (Mont. 1972),500 P.2d 945; Stafford Metal Works, Inc. v. Cook Paint and Varnish Co.
(N.D.Tex. 1976), 418 F. Supp. 56; Stetina v. State Farm Mut. Auto.Ins. Co. (Neb. 1976), 243 N.W.2d 341; Moring v. State Farm Mut.Auto. Ins. Co. (Ala. 1983), 426 So.2d 810; Nat. Union Fire Ins. Co.of Pittsburgh, Pa. v. Engineering-Science, Inc. (N.D.Cal. 1987),673 F. Supp. 380. But, see, Norris v. Allstate Ins. Co.
(La.App. 1974), 293 So.2d 918; Cozzi v. Government Emp. Ins. Co.
(N.J.App. 1977), 381 A.2d 1235; Transport Trailer Serv., Inc. v.The Upjohn Co. (E.D.Pa. 1981), 506 F. Supp. 442; Fashion TanningCo., Inc., v. Fulton Cty. Electrical Contrs., Inc. (1989),536 N.Y.S.2d 866. This appears to be an issue of first impression in Ohio.
The rule against subrogation in the multiple policy context results partly from concerns over allowing the insurer to represent both sides in the personal injury litigation. Subrogation is defined as: "The substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities." Black's Law Dictionary (6 Ed. 1990) 1427. Therefore, subrogation allows the insurer to stand in the shoes of the injured party and exercise the injured party's right to sue the tortfeasor. Where the insurer is also obliged to indemnify the tortfeasor, subrogation effectively permits the insurer to sue itself. See Stafford, supra at 58. This issue caused the Keystone court to note that it had "grave doubts that the * * * courts should be used by an insurer to clean up its books and, `if need be, transfer funds from its liability `pool' to its indemnity `pool.''" Keystone,supra at 1053.
Some of the other related concerns raised by allowing an insurer to subrogate against its own insured are set forth in HomeInsurance, supra at 949:
 Such action, if permitted, would (1) allow the insurer to expend premiums collected from its insured to secure a judgment against the same insured on a risk insured against; (2) give judicial sanction to the breach of the insurance policy by the insurer; (3) permit the insurer to secure information from its insured under the guise of policy provisions available for later use in the insurer's subrogation action against its own insured; (4) allow the insurer to take advantage of its conduct and conflict of interest with its insured; and (5) constitute judicial approval of a breach of the insurer's relationship with its own insured.
 Additionally, the Stafford court cautioned: "The fiduciary relationship between insurer and insured is fraught with conflicting interests. * * * [A]llowing the insurer to sue his own insured would upset this tenuous relationship." Stafford, supra. Thus, allowing subrogation in the instant case would raise serious public policy issues.
However, because Nationwide is not actually seeking subrogation, we find it unnecessary to decide the subrogation issue. Nationwide does not intend to substitute itself for Craven or otherwise attempt to recover any portion of Craven's losses directly from Cummings. Instead, Nationwide merely seeks to be reimbursed by Craven from the proceeds that Craven has already received from the personal injury award. This does not require Nationwide to pursue a claim against Cummings and thereby sue itself. Therefore, the concerns that were set forth in Stafford,Home Insurance, and Keystone, are not raised herein.
In drawing this distinction between subrogation and reimbursement, we rely on Control Specialists Co., Inc. v. StateFarm Mut. Auto. Ins. Co. (Neb. 1988), 423 N.W.2d 775; Reichl v.State Farm Mut. Auto. Ins. Co. (Wash.App. 1994), 880 P.2d 558;Maynard v. State Farm Mut. Auto. Ins. Co. (Alaska 1995),902 P.2d 1328; Richards v. Allstate Ins. Co. (W.Va. 1995), 455 S.E.2d 803. These cases all involved facts similar to those confronted herein.
Reichl and Maynard both permitted the insurer to seekreimbursement from the injured party. The Reichl court stated:
 Reichl [the injured party] next argues that State Farm has no right to be reimbursed because it could not subrogate against Stetz [the tortfeasor], its own insured. * * * State Farm, however, is not attempting to subrogate against Stetz. Rather, it is claiming reimbursement from the proceeds of the Reichl-Stetz judgment. * * * [W]hen the Reichl-Stetz judgment was satisfied by Stetz or someone on his behalf, the proceeds of that judgment * * * constituted a fund separate from Stetz, and State Farm [could] subrogate against that fund without breaching its promise to indemnify Stetz.
Reichl, supra at 560 (fn. omitted). The Maynard court stated:
 Regarding the more general concerns about the insurer's fiduciary duties to its insured, State Farm notes:
 The right to reimbursement provision is a contractual setoff distinct from a subrogation action. Enforcement of the provision is not the functional equivalent to suit against one to whom the insurer owes an indemnity obligation.
 In other words, where both the claimant and tortfeasor are insured by the same company, this provision does not give rise to a cause of action initiated by the insurance company against its insured. Instead, it is an automatic setoff which occurs only as a result of the insured seeking damages which he has already been compensated for under his own policy.
Maynard, supra at 1333.
Control Specialists and Richards both concluded that the insurer could have sought reimbursement if the insurance policy had contained the appropriate language. In Richards, the policy merely stated: "Upon payment * * *, Allstate shall be subrogated to the extent of such payment to all of the insured's rights of recovery therefor." Richards, supra at 807, fn. 5. The Richards
court noted:
 Allstate argues the question is not whether there is a right of subrogation, but instead is whether Allstate can receive reimbursement of the medical payments it made to the plaintiffs. However, as in Control Specialists, the plaintiffs' policy does not contain any language providing for reimbursement. It only contains language with regard to subrogation. * * * Although Allstate could have placed language in its policy providing for reimbursement in this type of situation, it did not.
Id. at 806-807 (fn. omitted). See, also, Moring, supra at 811-812, and Stetina, supra at 342-343, wherein the policies failed to mention reimbursement. But, see, Maynard, supra at 1331, wherein the policy specifically provided that, "[w]hen we pay medical expenses under this coverage, we are entitled to be paid out of any subsequent recovery for bodily injury from a liable party or such party's insurer." (Emphasis omitted.)
The policy provision at issue herein — "we may require reimbursement from the insured out of any settlement or judgment that duplicates our payments" — clearly requires Craven to reimburse Nationwide from any recovery that duplicates its payments to her. Thus, Craven's policy is more analogous to theMaynard policy than those at issue in Richards, Moring, orStetina.
We conclude that this language is sufficient to provide Nationwide with a right to reimbursement, independent of any subrogation right. Such a right to reimbursement permits Nationwide to offset the med-pay claim against the personal injury claim, regardless of the validity of Nationwide's right to subrogation. Thus, Craven is not entitled to double recovery of her medical expenses and the dismissal of Craven's med-pay claim is affirmed.
 IV.
Additionally, Craven argues that it was improper for Nationwide to administratively offset the payments on the two claims. Craven would seem to propose that Nationwide be required to pay one claim, then pay the other claim, then seek reimbursement. However, we believe this would be senseless. SeeMaynard, supra at 1332; Reichl, supra at 560. By allowing an automatic, administrative set off, the parties are able to do in one step what it would otherwise require three steps to accomplish. Thus, an insurer in this situation is entitled to administratively deduct from the second claim any amounts that have already been paid on the first claim. This avoids the necessity of a subsequent action for reimbursement.
 V.
Having determined that the reimbursement clause prevents Craven from obtaining a double recovery of her medical expenses, Craven's third and fourth assignments of error are rendered moot.
 VI.
Lastly, we confront Craven's second assignment of error challenging the dismissal of her bad faith claim.
The standard for insurance bad faith claims was reiterated and clarified in Zoppo v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552. "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." Id. at paragraph one of the syllabus. "Intent is not and has never been an element of the reasonable justification standard." Id. at 555 (emphasis sic).
In this case, Craven's insurance policy requires Nationwide to reimburse her for all reasonable accident-related medical expenses regardless of fault. However, Craven alleges that Nationwide refused to pay her medical expenses, not because they were unreasonable or unrelated to the accident, but solely because Nationwide wanted to wait and set off the med-pay claim against an eventual personal injury settlement. Craven believes this constitutes bad faith.
Nationwide does not appear to dispute Craven's factual allegations. Nationwide asserts: "In an effort to resolve both claims, defense counsel in the Cummings action (now a lawsuit) offered Plaintiff $15,000.00 in settlement. That figure represented $11,717.17 for bodily injury and $3,282.83 for med-pay." Nationwide admits that the "`normal sequence [is] probably . . . for the med-pay to [be] paid prior to when a liability settlement [is] reached.'" However, Nationwide claims that it was reasonable to settle both claims simultaneously in this instance, because "`it seemed like everything was coming to a head at once.'" Nationwide argues that, "[t]hat circumstance, i.e., coming to a head all at once, and not any bad faith on Nationwide's part, dictated that med-pay, and liability as offset by med-pay, be offered simultaneously instead of consecutively."
However, Craven counters that the only reason that both claims were "coming to a head all at once" was because Nationwide refused to pay the med-pay claim until Craven settled the personal injury claim. Craven points to the testimony of Lynne Myers, the claims adjuster who had been assigned to handle Craven's med-pay claim. Myers stated that she found that Craven was entitled to $6,567.09 in med-pay coverage, but that she was instructed not to offer anything because any settlement in the personal injury case would include the med-pay claim. Craven also produced a letter from Joyce Laybourn, the Nationwide attorney assigned to defend Cummings in the personal injury action, wherein Laybourn offered $15,000.00 to settle both claims at the same time. The letter specifically indicated that this offer only included half of the medical expenses that Myers determined to be legitimate. Craven refused the offer, claiming that she was entitled to have her medical expenses fully compensated regardless of whether she settled the personal injury claim. Despite Craven's protestations, Nationwide never offered to pay the med-pay claim separately.
In section III, we refused to permit Craven to obtain a double recovery of her medical bills based solely on the fortuitous circumstance that she happened to share an insurer with the tortfeasor. We also refuse to allow Nationwide to take advantage of this same fortuitous circumstance by withholding legitimate medical payments solely to await the subsequent resolution of a related personal injury claim.
Therefore, without concluding that Nationwide's "coming to a head all at once" justification for withholding medical payments is per se unreasonable, we believe that it may not be reasonable if the claims are "coming to a head all at once" solely because the insurer refuses to pay the med-pay claim until the personal injury claim is resolved. Such conduct may constitute a violation of the insurer's duties of good faith and fair dealing.
Although Nationwide argues that it was shear coincidence that both claims came to a head at once, Craven has offered sufficient evidence to the contrary to avoid summary judgment. Craven's second assignment of error is well-taken. Summary judgment on Craven's bad faith claim was inappropriate and is reversed and remanded for further proceedings.
Affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
 Exceptions. _______________________________ DANIEL B. QUILLIN
FOR THE COURT
SLABY, P. J.
BAIRD, J.
CONCUR.