617 S.E.2d 790

**Brenton L. FERRELL and Kathleen D. Ferrell, Plaintiffs Below, Appellees,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant Below, Appellant.**

No. 32050.

Supreme Court of Appeals of West Virginia.

Submitted: March 22, 2005.

Filed: July 8, 2005.

244

Janet C. Williamson, Esq., Shott, Gurganus, Williamson & Magann, Bluefield, for Appellees.

Barbara J. Keefer, Esq., Maria Marino Potter, Esq., MacCorkle, Lavender, Casey & Sweeney, PLLC, Charleston, for Appellant.

Justice STARCHER delivered the Opinion of the Court.

STARCHER, J.

In this declaratory judgment action between an insurance company and its insureds from the Circuit Court of Mercer County, the circuit court certifies a question concerning the validity of certain insurance policy language. The language permits the insurance company to seek "reimbursement" of medical payments, made to an insured, from the insured when the insured has recovered damages for the same medical expenses from a negligent third party. The circuit court's question asks whether such language is enforceable when both the insured and the negligent third party are insured by the same insurance company.

■ As set forth below, when both the insured and the negligent third party are insured by the same insurance company, we find that the insurance company may recoup medical expense payments from the insured's recovery against the negligent third party, when the policy allows the insurance company to seek "reimbursement" and the in-

1. The Dodge Neon was owned and insured by Mrs. Ferrell's parents, Mary and Clarence Bald-

sured's recovery clearly duplicates the medical expense payments.

## I.

### *Facts & Background*

On January 19, 2002, a Dodge Neon driven by the plaintiff-below, Kathleen D. Ferrell,[1] was struck by another vehicle driven by Kermit D. Davis. Both vehicles were insured by the defendant below, Nationwide Mutual Insurance Company ("Nationwide").

Mrs. Ferrell and her husband, plaintiff-below Brenton L. Ferrell, were injured in the collision. The plaintiffs initially sought coverage for their medical bills from the Nationwide policy that covered the Dodge Neon. The policy contained "Family Compensation Coverage" that provided for the payment of any medical expenses that resulted from any accidental bodily injury sustained by any person while occupying the vehicle, regardless of fault. Nationwide paid Mrs. Ferrell $2,982.61 for her medical expenses, and paid Mr. Ferrell $1,884.76.

Thereafter, the Ferrells presented a claim for damages against Mr. Davis's Nationwide liability insurance policy. As part of their claim, the Ferrells submitted the same medical expenses for which they had previously received payment from Nationwide under their "Family Compensation Coverage." Nationwide offered to settle Mrs. Ferrell's claim against the tortfeasor for $10,000.00, and to settle Mr. Ferrell's claim for $6,000.00.

The plaintiffs accepted the offers of settlement on the condition that Nationwide would waive any right to repayment or "subrogation" of its medical payments to the plaintiffs under their "Family Compensation Coverage." Nationwide, citing to language contained in the policy covering the Dodge Neon, refused to waive its right to repayment, claiming that the policy permits Nationwide to demand "reimbursement" from its insured for any medical payments made.

Nationwide acknowledged the existence of a dispute regarding the policy language. So,

win.

on June 10, 2003, Nationwide issued four separate checks to the plaintiffs: two of the checks were payable both to the plaintiffs and to Nationwide, and were essentially for the amounts paid to the plaintiffs under the "Family Compensation Coverage;" and the other two checks were for the balance, payable exclusively to the plaintiffs.[2]

The plaintiffs thereafter filed the instant declaratory judgment action to determine whether Nationwide was entitled, under the language of its policy, to pursue "subrogation" or "reimbursement" of medical payments made under the policy from the plaintiffs' settlement against the tortfeasor.

## II.

### Certified Question

The circuit court's certified question centers upon policy language which is contained within "amendatory Endorsement 2256C" to the Nationwide "Century II Auto Policy" which covered the Dodge Neon. The pertinent portion of the policy states:

5. SUBROGATION

We have the right of subrogation under the:

. . .

c) Medical Payments;

d) Family Compensation;

. . .

coverages in this policy. This means that after paying loss to you or others under this policy, we will have the insured's right to sue for or otherwise recover such loss from anyone else who may be liable. Also, if the insured receives a recovery from any liable party, including another Nationwide insured, we may require the insured to reimburse us when the proceeds of recovery duplicate our payment. These provisions will be applied in accordance with state law. Any insured will sign such papers, and do whatever else is necessary, to transfer these rights to us and will do nothing to prejudice them.

The circuit court examined the language used by Nationwide in the policy and found it to be ambiguous. However, before formally ruling on whether or not, Nationwide was entitled to "subrogation" or "reimbursement" of the medical payments it made to the plaintiffs, the circuit court chose to certify the following question to this Court:

Whether the policy provisions of the Century II Auto Policy as amended by Endorsement 2256C provide clear and unambiguous language which creates a contractual right to reimbursement of medical expense payments where an insured received a recovery from another Nationwide insured and the proceeds of that recovery duplicate the insurer's previous payment.

The circuit court answered the certified question "No."

## III.

### Discussion

■■■ This Court employs a plenary standard of review when we answer certified questions. "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syllabus Point 1, *Gallapoo v. Wal–Mart Stores, Inc.,* 197 W.Va. 172, 475 S.E.2d 172 (1996). However, when a certified question is framed so that this Court is not able to fully address the law which is involved in the question, then this Court retains the power to reformulate the questions certified to it. Syllabus Point 3, *Kincaid v. Mangum,* 189 W.Va. 404, 432 S.E.2d 74 (1993).

This case centers on policy language permitting an insurance company to seek "reimbursement" of medical payments from an insured, and whether that language is enforceable when the insurance company insures both the insured and the tortfeasor who caused injury to the insured. We believe that the certified question from the circuit court, by asking the Court to rule on

---

**2.** The four checks were payable in the following fashion: (1) a check for $4,756.06 payable to Mr. and Mrs. Ferrell and their attorney; (2) a check for $1,243.94 payable to Mr. and Mrs. Ferrell, their attorney and "Nationwide Insurance as subrogee for Brent Ferrell;" (3) a check for $8,031.48 payable to Mr. and Mrs. Ferrell and their attorney; and (4) a check for $1,968.52

payable to Mr. and Mrs. Ferrell, their attorney, and "Nationwide Insurance as subrogee for Kathleen Ferrell." The two checks that included Nationwide as payee reflected a reduction of one third for the plaintiffs' attorney's fees, and a proportionate share of the costs incurred in each claim.

whether or not Nationwide's policy is ambiguous and whether the proceeds of the plaintiffs' recovery duplicate Nationwide's previous payment to the plaintiffs, is too fact-specific and detracts from the central issue of law that is involved in the question. We therefore reformulate the question as this:

May an insurance company seek reimbursement of medical expense payments made to an insured, where (a) the insurance policy allows the insurance company to seek "reimbursement" of those medical expense payments from the insured out of any recovery obtained by the insured from a third party; (b) the proceeds of the recovery from the third party duplicate the insurance company's medical expense payments to the insured; and (c) the insurance company is the liability insurer of the third party?

Generally speaking, West Virginia's public policy permits insurance companies to pursue "subrogation" of medical payments from their own insureds. *See* Syllabus, *Travelers Indemnity Co. v. Rader,* 152 W.Va. 699, 166 S.E.2d 157 (1969).[3] However, while an insurance company may pursue subrogation against any insured who receives benefits under the policy if the insured successfully recovers from a tortfeasor, the insurance company must reimburse the insured its share of the attorneys' fees and costs of obtaining the recovery from the tortfeasor. *See* Syllabus Points 2 and 3, *Federal Kemper Ins. Co. v. Arnold,* 183 W.Va. 31, 393 S.E.2d 669 (1990).[4]

A different result occurs, however, when an insurance company seeks "subrogation" of medical expense payments from a plaintiff-insured when both the plaintiff-insured and the tortfeasor are insured by the same insurance company.

In *Richards v. Allstate Ins. Co.,* 193 W.Va. 244, 455 S.E.2d 803 (1995), we concluded that when the insurance company insures both the injured plaintiff and the negligent defendant, and the plaintiff recovers from the defendant, the insurer cannot seek from the plaintiff "subrogation" of medical payments made to the plaintiff. In *Richards,* the plaintiffs were injured in an automobile accident with a third-party tortfeasor. The plaintiffs' insurance company, Allstate, paid the plaintiffs $4,000.00 pursuant to medical payments insurance coverage purchased by the plaintiffs. The plaintiffs later recovered $59,000.00 in a settlement from the tortfeasor—who, coincidentally, was also insured by Allstate. Allstate then sought to recover the $4,000.00 in medical payments from the plaintiffs by exercising its contractual right to "subrogation."

In concluding that the insurance company could not pursue "subrogation" from the plaintiff-insured, the Court in *Richards* analyzed the case in two steps. In the first step, the Court concluded that Allstate had no right to subrogation against the tortfeasor, because Allstate was also the tortfeasor's liability insurer. "In essence, it creates a situation where an insurance carrier is claiming a right of subrogation against itself." *Richards,* 193 W.Va. at 246, 455 S.E.2d at 805. The Court reasoned that:

To permit the insurer to sue its own insured for a liability covered by the insurance policy would violate these basic equity principles, as well as violate sound public policy. Such action, if permitted, would (1) allow the insurer to expend premiums collected from its insured to secure a judgment against the same insured on a risk insured against; (2) give judicial sanction

---

**3.** In the Syllabus to *Travelers Indemnity Co. v. Rader,* 152 W.Va. 699, 166 S.E.2d 157 (1969), we stated:

A provision in an insurance policy providing for the subrogation of the insurer to the rights of the insured to the extent that medical payments are advanced to such insured by the insurer is distinct from an assignment of a tort claim and is not invalid as against the public policy of this State.

**4.** Syllabus Points 2 and 3 of *Federal Kemper Ins. Co. v. Arnold,* 183 W.Va. 31, 393 S.E.2d 669 (1990) state:

2. A valid subrogation clause in an automobile insurance contract is enforceable within its terms against any covered person who receives benefits under the policy, even if other than the named insured.

3. When an automobile insurer is reimbursed, under a subrogation clause in the insurance contract, for benefits paid to a covered person that such person has then successfully recovered from a third party, the reimbursement should be reduced by the insurer's *pro rata* share of the cost to the covered person of obtaining the recovery against the third party.

to the breach of the insurance policy by the insurer; (3) permit the insurer to secure information from its insured under the guise of policy provisions available for later use in the insurer's subrogation action against its own insured; (4) allow the insurer to take advantage of its conduct and conflict of interest with its insured; and (5) constitute judicial approval of a breach of the insurer's relationship with its own insured.

193 W.Va. at 247, 455 S.E.2d at 806 (*quoting Stetina v. State Farm Mut. Auto. Ins. Co.,* 196 Neb. 441, 451, 243 N.W.2d 341, 346 (1976), *quoting Home Ins. Co. v. Pinski Bros., Inc.,* 160 Mont. 219, 225–26, 500 P.2d 945, 949 (1972)). The Court therefore concluded in Syllabus Point 2 of *Richards* that:

No right of subrogation can arise in favor of an insurer against its own insured, since by definition subrogation arises only with respect to rights of the insured against third persons to whom the insurer owes no duty.

In the second step, the Court concluded that because Allstate could not maintain a "subrogation" claim against the tortfeasor, then it could not maintain a "subrogation" claim against the plaintiff-insured either. The Court began by finding that the policy language only permitted Allstate to seek "subrogation" of medical payments. The Court determined that Allstate was "entitled to reimbursement [from the plaintiff-insured] only if it can maintain a valid subrogation claim." 193 W.Va. at 248, 455 S.E.2d at 807. Because Allstate had no valid right of subrogation against the tortfeasor, it therefore had no right of subrogation against the plaintiff-insured. In sum, the *Richards* Court found that "[a]n insurance carrier may not rely upon a subrogation clause in its policy to receive reimbursement [from a plaintiff-insured] when it also insures the tortfeasor." 193 W.Va. at 249, 455 S.E.2d at 808.

The instant case finds its genesis in certain *dicta* contained within the Court's discussion in *Richards.* While the Court found unenforceable the contractual policy language giving an insurance company a right to "subrogation" from the plaintiff-insured, the Court went on to suggest that a different outcome might be reached if an insurance company were to employ policy language creating a right to "reimbursement." The Court stated,

[t]he best way an insurance carrier can prevent a situation like the present one from arising is to place clear and unambiguous language in its policy providing for the reimbursement of medical payments it may advance to its insured to the extent such medical payments are compensated by a settlement with or judgment against a tortfeasor whom it also insures . . . .

Finally, Allstate argues that to permit the plaintiffs a double recovery would allow them to receive an amount they did not bargain for in the contract. . . . Regardless of the merits of Allstate's contention with regard to its calculation of premiums for medical payments, Allstate is bound by the provisions of its own policy; and, if it desires to prevent double recoveries, it should place reimbursement language in its policies as previously discussed . . . .

In conclusion, we understand Allstate's concern with regard to preventing insureds from receiving double recoveries; nevertheless, we hold the best way to deal with this problem is not to permit an insurance carrier to assert a right of subrogation against one of its own insured, but rather to have an insurance carrier insert clear and unambiguous language with regard to reimbursement in its policies.

193 W.Va. at 249, 455 S.E.2d at 808.

In the instant case we are called upon reconsider our *dicta* in *Richards.*[5] Nation-

---

**5.** In *Newman v. Kay,* 57 W.Va. 98, 112, 49 S.E. 926, 931 (1905), we said:

One of the best definitions of the term *obiter dictum* is said to be that given by Folger, J., in *Rohrbach v. Germania Fire Ins. Co.,* 62 N.Y. 47, 58. He said: *"Dicta* are opinions of a judge which do not embody the resolution or determination of the court, and made without argument, or full consideration of the point, are not

the professed deliberate determinations of the judge himself; *obiter dicta* are such opinions uttered by the way, not upon the point or question pending, as if turning aside from the main topic of the case to collateral subjects." *See also, In re Assessment of Kanawha Valley Bank,* 144 W.Va. 346, 382–83, 109 S.E.2d 649, 669 (1959) ("Obiter dicta or strong expressions in an opinion, where such language was not

wide argues that, in response to the Court's discussion in *Richards,* its policy now expressly includes language permitting the insurance company to seek "reimbursement" of medical payments from an insured. Nationwide argues that its policy language provides that if an insured person receives a recovery from any liable party, including another Nationwide insured, then Nationwide may "require the insured to reimburse us when the proceeds of recovery duplicate our payment." Because its policy now conforms to *Richards,* Nationwide argues that it should be permitted to seek reimbursement for the medical payments it made to the plaintiffs from the settlement proceeds received by the plaintiffs.

In reply, the plaintiffs argue that the policy language still violates the mandate of *Richards* because, taken as a whole, it is placed in the policy under the heading "subrogation" and essentially describes a process of subrogation against an insured, not reimbursement. Citing to the Court's reasoning in *Richards,* the plaintiffs contend that allowing an insurer to enforce "reimbursement" language in a policy to recover medical payments made to an insured would, in essence, allow the insurer to expend premiums collected from a policyholder to pursue an action against the same policyholder, and to secure a recovery from the policyholder on a risk against which the policy was intended to insure. Furthermore, the plaintiffs assert that because the medical payments must be returned to the insurer, the insured has essentially purchased no coverage for his or her medical payment premium. Because such a conflict of interest is anathema to an insurer's duty toward its policyholder, the plaintiffs contend that reimbursement language in a policy should, like subrogation language, be unenforceable.

We have carefully examined the positions asserted by both sides, and are torn between finding reimbursement language enforceable

because it is a matter of contract between the parties, or unenforceable because of public policy concerns regarding the conflicts of interest inherent when an insurer represents both the plaintiff and the defendant. Our considerations are further confounded by the fact that our 1969 holding in *Travelers Indemnity Co. v. Rader, supra*—which sanctioned insurance company efforts to obtain "subrogation" of medical payments from an insured—is a distinctly minority position in American jurisprudence. *See* Lee R. Russ, 16 *Couch on Insurance, Third Edition* § 224.1 ("In accord with the basic definition of subrogation as a right that arises only with respect to rights of the insured against third persons to whom the insurer owes no duty, it has long been held that no right of subrogation can arise in favor of an insurer against its own insured."); *Irvin E. Schermer, et al.,* 1 *Automobile Liability Insurance 3d,* § 19:8 ("It is well settled that an insurer can have no right of subrogation against its own insured."); 44A *Am.Jur.2d,* "Insurance," § 1770 ("Under the anti-subrogation rule, no right of subrogation can arise in favor of an insurer against its own insured or coinsured because, by definition, subrogation exists only with respect to the rights of an insurer against third persons, to whom the insurer owes no duty.").[6]

Our examination of case law from other jurisdictions reveals that while only a few courts have addressed "reimbursement" language in insurance policies directly, those courts have usually concluded that policy language permitting an insurer to seek reimbursement from an insured is enforceable. As one commentator states, "[a]ttempts to invalidate contractual reimbursement rights on the ground that they violated the principles embodied in the antisubrogation rule prohibiting recovery under that theory by an insurer against its own insured have not been successful." Lee R. Russ, 16 *Couch on In-*

---

necessary to a decision of the case, will not establish a precedent.").

**6.** In 1990, Chief Justice Neely noted West Virginia's minority position in *Federal Kemper Ins. Co. v. Arnold:*

> The argument that subrogation clauses in automobile insurance policies are contrary to public policy is grounded in the conceptual simi-

larity between subrogation and assignment of tort claims. The latter practice was condemned at common law. The argument has succeeded in other states, but not in West Virginia. This Court has already decided the issue squarely [in *Travelers Indemnity Co. v. Rader*].

*Federal Kemper Ins. Co. v. Arnold,* 183 W.Va. at 33, 393 S.E.2d at 671.

surance, Third Edition § 226:25. See, e.g., Maynard v. State Farm Mut. Auto. Ins. Co., 902 P.2d 1328 (Alaska 1995) (neither contract language nor public policy prohibited insurance company from seeking "reimbursement" from plaintiff for medical expenses out of settlement with third-party tortfeasor, who was also insured by the same insurance company); Reichl v. State Farm Mut. Auto. Ins. Co., 75 Wash.App. 452, 880 P.2d 558 (1994) (court upheld insurer's right to reimbursement from plaintiff-insured because "the parties' insurance contract ... state[d] that State Farm will be entitled to reimbursement[.]"); Gibson v. Country Mut. Ins. Co., 193 Ill.App.3d 87, 139 Ill.Dec. 700, 549 N.E.2d 23 (1990) (policy permitting insurance company to recoup medical payments to plaintiff-insured out of damages insured obtained from any third party were unambiguous and enforceable).

"While the antisubrogation rule [which prohibits insurers from recouping payments to an insured from the insured through 'subrogation'] might not be applicable to a claim for reimbursement, the courts will still scrutinize the actions of the insurer to determine whether a conflict of interest has developed with its insured. For example, the insurer may be prevented from utilizing the claim for reimbursement from a third party / tortfeasor to resolve a coverage dispute with its insured." Lee R. Russ, 16 Couch on Insurance, Third Edition § 226:6. Our research suggests that while courts have conceded that there are theoretical opportunities for conflicts of interest, none have yet found those conflicts to be of substantial enough quality to warrant invalidating reimbursement language in a policy. See, e.g., Maynard v. State Farm Mutual Auto. Ins. Co., 902 P.2d at 1332–33.

Allowing an insurer to seek reimbursement for medical payments from an insured does not, as the plaintiffs argue, make medical payments coverage illusory. The coverage permits the insured to gain speedy reimbursement for medical expenses incurred as a result of a collision without regard to the insured's fault. It also assures coverage when the insured is involved in an accident with an uninsured or underinsured driver. And in situations where both parties to an accident are insured by the same insurer, it sometimes eliminates the need for costly litigation to determine fault. Maynard v. State Farm Mutual Auto. Ins. Co., 902 P.2d 1328, 1334 (Alaska 1995).

■ We therefore conclude that, in the absence of a conflict of interest with its insured, when an insurance policy (a) allows an insurance company to seek "reimbursement" of medical expense payments to an insured out of any recovery obtained by the insured from a third party; (b) the insured obtains a recovery from a third party that duplicates the insurance company's medical expense payments to the insured; and (c) when the insurance company is also the liability insurer of the third party, then the insurance company may seek reimbursement of those medical expense payments from the insured.

## IV.

### Conclusion

The question from the circuit court, as rephrased, states:

> May an insurance company seek reimbursement of medical expense payments made to an insured, where (a) the insurance policy allows the insurance company to seek "reimbursement" of those medical expense payments from the insured out of any recovery obtained by the insured from a third party; (b) the proceeds of the recovery from the third party duplicate the insurance company's medical expense payments to the insured; and (c) the insurance company is the liability insurer of the third party?

We answer the question "yes."

Certified Question Answered.